Filed 6/30/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JEFFREY WALKER, <br><br>     Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, <br><br>     Respondent; <br><br> THE PEOPLE, <br><br>     Real Party in Interest. | A159563 <br><br> (City & County of San Francisco Super. Ct. No. 2219428) |

Jeffrey Walker petitions for a writ of mandate that would direct the superior court to reverse its finding of probable cause to commit Walker as a sexually violent predator (SVP). Walker argues the superior court's finding was based on inadmissible hearsay contained in two statutorily mandated psychological evaluations. We hold that the SVP statute, which requires these psychological evaluations as the basis for an SVP petition, also requires the court to consider the evaluations in deciding whether there is probable cause to proceed to an SVP trial. In reviewing the evaluations, the court may consider hearsay contained within them. Thus, we deny Walker's writ petition.

BACKGROUND

In June 2015, as Walker neared the end of a state prison commitment, the People filed a petition to commit him civilly as an SVP. The petition was supported by the evaluations of two psychologists appointed by the Director of State Hospitals, Thomas MacSpeiden and Roger Karlsson. Both psychologists concluded Walker satisfied the criteria to be considered an SVP. Their evaluations noted that Walker had previously been convicted of a sexually violent offense—a 1990 conviction for rape. The evaluations also described offenses charged against Walker that did not result in a conviction for a sexually violent offense.

The trial court held a probable cause hearing spanning five sessions in February and March of 2016. At the beginning of the hearing, Walker objected to the admission of the MacSpeiden and Karlsson evaluations on the ground they contained inadmissible hearsay. In particular, Walker objected to portions of the evaluations describing details of two sexually violent offenses for which Walker was charged but not convicted. One of these offenses was a rape charge from 1989 that was dismissed prior to trial, though Walker was convicted of unlawful sexual intercourse with a minor against the same victim. (See Pen. Code, § 261.5.) A second offense was also an alleged rape, in 2005. A jury acquitted Walker of this charge, though it convicted him of pandering the same victim. The experts obtained details of the conduct underlying these two alleged offenses from a probation report and a police inspector's affidavit.

The trial court overruled Walker's objection to the psychologists' evaluations. During the probable cause hearing, Walker's attorney cross-examined the psychologists at length about their evaluations, including their reliance on the alleged rapes from 1989 and 2005 that did not result in

convictions.  Walker also testified on his own behalf and called a number of his own witnesses, including a third psychologist appointed by the Director of State Hospitals who concluded Walker did not meet the criteria to be considered an SVP.  Following the hearing, the trial court found there was probable cause to believe Walker should be committed as an SVP.

In September 2016, Walker moved to dismiss the SVP petition.  He argued that the psychological evaluations contained case-specific hearsay statements submitted for their truth, in contravention of the Supreme Court's then-recent decision in *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*).  The trial court denied the motion.  In March of 2017, Walker moved to have the court reconsider the denial of his prior motion to dismiss based on new case law applying *Sanchez* to SVP trials.  The trial court again denied the motion.

In October 2019, Walker filed another motion to dismiss, this time citing *Bennett v. Superior Court* (2019) 39 Cal.App.5th 862 (*Bennett*), which held, relying on *Sanchez*, that case-specific facts conveyed by two psychologists in their evaluations and testimony were inadmissible at an SVP probable cause hearing.  (*Id.* at p. 880.)  The trial court denied Walker's motion.  Walker challenged the ruling in a petition for writ of mandate filed with this court (*Walker v. Superior Court* (Dec. 2, 2019, A158971) [nonpub. opn.]), which a different panel of this court summarily denied.

In January 2020, Walker filed another motion to dismiss, this time citing *Bennett* as well as a second appellate opinion, *People v. Superior Court* (*Couthren*) (2019) 41 Cal.App.5th 1001 (*Couthren*).  Once again, the trial court denied the motion.  Walker challenged the ruling by filing the instant petition for writ of mandate in our court.  In response, we issued an order to

show cause that directed the parties to address whether *Bennett* was correctly decided. The matter is now before us for decision.

## DISCUSSION

Walker contends the trial court impermissibly relied on case-specific hearsay contained in the psychological evaluations to find probable cause. Absent the inadmissible hearsay, he contends there was insufficient evidence to commit him as an SVP. As we explain, we conclude the statute governing SVP probable cause hearings permitted the trial court to consider the evaluations and any hearsay contained within them. At the probable cause hearing, but not at Walker's SVP trial still to occur, hearsay statements in the reports may be considered even where they are not independently proven by competent evidence or covered by another hearsay exception.

### A. The Sexually Violent Predator Act

The Sexually Violent Predator Act (SVP Act) (Welf. & Inst. Code, § 6600 et seq.)[1] "allows for the involuntary commitment of certain convicted sex offenders, whose diagnosed mental disorders make them likely to reoffend if released at the end of their prison terms." (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 235 (*Cooley*).) In order to commit a person as an SVP, the People must show that the person has been convicted of one or more of the sexually violent offenses listed in section 6600, subdivision (b); the person has a diagnosed mental disorder; and the mental disorder "makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) "The civil commitment can only commence if, after a trial, either a judge or a unanimous jury finds beyond a reasonable doubt that the person is an SVP." (*Cooley, supra*, 29 Cal.4th at p. 243.)

---

[1] All undesignated statutory references are to this code.

4

"The trial, however, is the last stage of a complex administrative and judicial process to determine whether an offender should be civilly committed as an SVP." (*Cooley*, *supra*, 29 Cal.4th at p. 244.) Before the People may file a petition to commit an inmate as an SVP, the Department of Corrections and Rehabilitation (CDCR) must first screen the inmate, generally at least six months before his or her scheduled release date. (§ 6601, subd. (a).) "If as a result of this screening it is determined that the person is likely to be a sexually violent predator, the [CDCR] shall refer the person to the State Department of State Hospitals for a full evaluation of whether the person meets the criteria in Section 6600." (§ 6601, subd. (b).)

When the CDCR refers an inmate to the Department of State Hospitals, the Department of State Hospitals "shall evaluate the person in accordance with a standardized assessment protocol, developed and updated by the State Department of State Hospitals, to determine whether the person is a sexually violent predator as defined in this article. The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." (§ 6601, subd. (c).) The offender is first evaluated by two mental health professionals designated by the Director of State Hospitals. (§ 6601, subds. (c), (d).) If both evaluators concur "that the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," the Director of State Hospitals forwards a request for a petition for civil commitment to the county in which the inmate was convicted of the offense for which he is currently incarcerated. (§ 6601, subd. (d).) If only one

5

professional concludes the offender meets the criteria stated in section 6601, subdivision (d), then the Director of State Hospitals arranges for further examination by two independent mental health professionals. (§ 6601, subd. (e).) Both of these mental health professionals must agree the inmate meets the criteria for commitment as an SVP in order for the process to proceed. (*Ibid.*)

If, after conducting this evaluation process, the evaluators agree that the inmate is an SVP, the Department of State Hospitals forwards a request to county prosecutors to file a commitment petition. (§ 6601, subds. (f), (h)(1), (i).) "Copies of the evaluation reports and any other supporting documents shall be made available to the attorney . . . who may file a petition for commitment." (§ 6601, subd. (h)(1).) If the county prosecutors agree with the recommendation, "a petition for commitment shall be filed in the superior court." (§ 6601, subd. (h)(1).)

Once a petition has been filed, the trial court must review it. As an interim step if a request is made, "a judge of the superior court shall review the petition and determine whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6601.5.) If the judge determines the petition contains sufficient facts to establish probable cause, "[t]he probable cause hearing provided for in Section 6602 shall commence within 10 calendar days of the date of the order issued by the judge." (*Ibid.*)

Whether or not preceded by the paper review of section 6601.5, a person alleged to be an SVP is entitled to a probable cause hearing. (§ 6602, subd. (a) (§ 6602(a)).) At the probable cause hearing, the judge "shall review the petition and shall determine whether there is probable cause to believe

that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (*Ibid*.) The SVP defendant "shall be entitled to assistance of counsel at the probable cause hearing." (*Ibid*.) If at the conclusion of the hearing "the judge determines there is not probable cause, he or she shall dismiss the petition and any person subject to parole shall report to parole. If the judge determines that there is probable cause, the judge shall order that the person remain in custody in a secure facility until a trial is completed." (*Ibid*.)

When a case advances to trial, the People have the burden of proving beyond a reasonable doubt that the defendant is a sexually violent predator. (§ 6604.) "If the court or jury determines that the person is a sexually violent predator, the person shall be committed for an indeterminate term to the custody of the State Department of State Hospitals for appropriate treatment and confinement in a secure facility." (*Ibid*.) Once a person has been found to be an SVP, the Department of State Hospitals must conduct annual mental health examinations, reporting to the court whether the person continues to meet the definition of an SVP. (§ 6604.9, subd. (a).) The report to the court must recommend whether unconditional discharge or conditional release to a less restrictive alternative (that would adequately protect the community) is in the person's best interest. (§ 6604.9, subd. (b).) If the Director of State Hospitals does not recommend either unconditional discharge or conditional release, the SVP may still petition for conditional release. (§ 6608, subd. (a).)

## B. Precedent Addressing the Probable Cause Hearing

The SVP Act is sparse in its description of the procedural requirements for a probable cause hearing, saying little more than this: "A judge of the superior court shall review the petition and shall determine whether there is

7

probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602(a).) However, the specific procedural requirements of a probable cause hearing have been delineated in a series of court of appeal and Supreme Court cases.

The first of these cases was *In re Parker* (1998) 60 Cal.App.4th 1453 (*Parker*), which established an SVP defendant's right to more than mere "paper review" of the petition and psychological evaluations. (*Id.* at p. 1460.) The People took the position in *Parker* that a paper review sufficed for a probable cause hearing, despite the hearsay nature of the evaluations. (*Id.* at p. 1461.) The court rejected this view, explaining that the language of section 6602 required "a hearing," meaning an SVP defendant should be "able to effectively challenge the facts on which the petition was filed, i.e., the underlying attached experts' evaluations." (*Id.* at p. 1468.) Although section 6602 does not specify "procedural requirements, other than the right to be represented by counsel and to have a hearing," the court concluded "common sense and fairness dictate" a defendant be allowed to present both oral and written evidence. (*Id.* at p. 1469.) Elaborating, the court explained: "While we believe the prosecutor may present the opinions of the experts through the hearsay reports of such persons, the prospective SVP should have the ability to challenge the accuracy of such reports by calling such experts for cross-examination. Further, the prospective SVP should have the ability to call such other witness who, upon a proper showing, the superior court judge finds to have relevant evidence." (*Id.* at pp. 1469–1470.)

The Supreme Court endorsed *Parker*'s approach to probable cause hearings in *People v. Cheek* (2001) 25 Cal.4th 894. *Cheek* addressed the parameters of a "show cause hearing" under section 6605, a parallel provision

8

of the SVP Act concerning unconditional release of a person previously committed as an SVP. The Court commented that a section 6605 show cause hearing "resembles" a section 6602 probable cause hearing, as both hearings are pretrial in nature and afford a defendant the right to be present and to be represented by an attorney. (*Id.* at p. 899.) Reasoning by analogy from *Parker*, the court concluded section 6605 "should be construed to grant a defendant the same rights to present evidence and cross-examine witnesses as he has under section 6602." (*Id.* at p. 900.)

One year after *Cheek*, the Supreme Court directly addressed the "scope and substance" of a probable cause hearing in *Cooley*, *supra*, 29 Cal.4th at p. 235. *Cooley* held that the purpose of a probable cause hearing is to inform the trial court's decision as to "whether a reasonable person could entertain a strong suspicion that the petitioner has satisfied all the elements required for a civil commitment as an SVP, specifically, whether (1) the offender has been convicted of a qualifying sexually violent offense . . .[2]; (2) the offender has a diagnosable mental disorder; (3) the disorder makes it likely he or she will engage in sexually violent criminal conduct if released; and (4) this sexually violent criminal conduct will be predatory in nature." (*Id.* at p. 236.) The Court reached this conclusion even though section 6602(a) describes the probable cause determination in different, and simpler, terms, requiring only probable cause to believe a person is " 'likely to engage in sexually violent predatory criminal behavior' " upon release. (*Cooley*, at p. 246.) The court interpreted section 6602(a) based on not only its language, but also the "purpose of the probable cause hearing within the structure of the SVP [Act],"

---

[2] When *Cooley* was decided, the SVP Act required proof of a qualifying sexually violent offense against at least two victims, but the SVP act was amended by voter initiative in 2006 to drop the requirement for a second victim. (See Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006).)

concluding that a probable cause determination must encompass all of the elements required for the ultimate determination at trial. (*Cooley*, at p. 247.)

The *Cooley* Court likewise looked to the purpose and structure of the SVP Act in interpreting the meaning of " 'likely' " in section 6602(a). (*Cooley*, *supra*, 29 Cal.4th at p. 254.) The Court concluded " 'likely' " meant the same thing in defining probable cause (§ 6602(a)) as it did in explaining what the two concurring psychological evaluations must find to initiate SVP commitment proceedings in the first place (§ 6601, subd. (d)). The Court reasoned, "the determination at the probable cause hearing is based on the petition filed by designated counsel, which is, in turn, necessarily based on the two concurring psychological evaluations required by section 6601." (*Cooley*, at pp. 255–256.)

In dicta, the Court in *Cooley* observed that the SVP Act "does not provide any specific procedural requirements for the probable cause hearing," but it again endorsed *Parker*'s interpretation of the statutory requirements. (*Cooley*, *supra*, 9 Cal.4th at p. 245, fn. 8.) The Court explained: *"Although the petitioner is allowed, despite their hearsay nature, to present the contents of any reports that form the basis of the petition as evidence*, the alleged sexual predator is allowed to cross-examine the expert concerning the evaluation and can call the expert to the stand for that purpose. ([*Parker*, *supra,* 60 Cal.App.4th] at pp. 1469–1470.) The person named in the petition is thus allowed to 'challenge the accuracy' of the evaluations by experts who found that he or she met the criteria for an SVP. (*Id*. at p. 1470.)" (*Ibid*., italics added.) For years, courts of appeal addressing other aspects of SVP proceedings have recited the *Parker*/*Cooley* rule as settled law. (E.g., *People v. Hayes* (2006) 137 Cal.App.4th 34, 43; *People v. Superior Court* (*Preciado*)

(2001) 87 Cal.App.4th 1122, 1130, fn. 2; *People v. Superior Court* (*Howard*) (1999) 70 Cal.App.4th 136, 154.)

Appellate case law has also established that the rules of evidence apply at an SVP probable cause hearing. Indeed, "the Evidence Code applies in all actions, '[e]xcept as otherwise provided by statute.' " (*In re Kirk* (1999) 74 Cal.App.4th 1066, 1072 (*Kirk*), quoting Evid. Code, § 300.) Finding no such exception for probable cause hearings, *Kirk* applied the certification requirements of Evidence Code sections 1530 and 1531.

Such was the settled state of the law until last year, when two appellate cases took issue with the *Parker/Cooley* rule allowing prosecutors to prove probable cause through the two statutorily mandated psychological evaluations, as long as the evaluators were subject to cross-examination. In *Bennett*, a Second District panel addressed whether criminal background information contained in the psychological evaluations should be excluded as hearsay at an SVP probable cause hearing. Similar to this case, the evaluations discussed two rape-related offenses that were charged against the defendant but dismissed before trial. (*Bennett*, *supra*, 39 Cal.App.5th at p. 869.) The psychologists relied on a police report and a probation report for descriptions of the alleged offenses. (*Ibid*.) The court held this was case-specific hearsay not separately shown by independent evidence nor covered by a hearsay exception, and that it was therefore inadmissible at the probable cause hearing. (*Id.* at pp. 880–881.)

Underlying the *Bennett* court's decision was *Sanchez*, where our Supreme Court clarified the circumstances under which an expert may testify to case-specific hearsay at a criminal trial. (*Sanchez*, *supra*, 63 Cal.4th at p. 670.) The Supreme Court explained: "When any expert relates to the jury case-specific out-of-court statements, and treats the content of those

11

statements as true and accurate to support the expert's opinion, the statements are hearsay. It cannot logically be maintained that the statements are not being admitted for their truth." (*Id.* at p. 686.) Case-specific hearsay facts may not be related by an expert "unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Ibid.*)

The court in *Bennett* noted that *Sanchez* had "repeatedly" been held to apply in SVP trials, and concluded *Sanchez* should be extended to SVP probable cause hearings, as well. (*Bennett*, *supra*, 39 Cal.App.5th at pp. 878, 882.) Consistent with settled law, the court rejected the People's argument that the formal rules of evidence, including the hearsay rule, did not apply at a probable cause hearing. (*Id.* at p. 882.) Charting a new course, the court then concluded the information about alleged rapes was case-specific hearsay inadmissible under *Sanchez*, leaving the trial court's finding of probable cause unsupported by substantial evidence, and requiring the SVP petition to be dismissed. (*Bennett*, at pp. 881, 885.)

A similar result was reached in *Couthren*, *supra*, 41 Cal.App.5th 1001, where another First District panel upheld on hearsay grounds a trial court's exclusion of expert evaluations, in their entirety, at a probable cause hearing. (*Id.* at p. 1006.) In reaching this conclusion, *Couthren* rejected the People's argument that section 6602(a)'s directive for a trial court to " 'review the petition' " establishes a hearsay exception for expert evaluations at a probable cause hearing. (*Couthren*, at pp. 1014–1015.) *Courthren* also endorsed *Bennett*'s conclusion that the evaluations were subject to *Sanchez*'s rule against case-specific hearsay not supported by independent evidence or covered by a hearsay exception. (*Couthren*, at pp. 1019–1021.)

## C. Reconciling *Sanchez* With *Cooley*

We agree with *Bennett* and *Couthren* that the rules of evidence, including the holding of *Sanchez*, apply at an SVP probable cause hearing. (See, e.g., *Bennett, supra,* 39 Cal.App.5th at pp. 882–883; *Couthren, supra,* 41 Cal.App.5th at p. 1012.) We see no basis for, and reject, the Attorney General's contrary argument. But unlike *Bennett* and *Couthren,* we also agree with the dicta in *Cooley,* that "the petitioner is allowed, despite their hearsay nature, to present the contents of any reports that form the basis of the petition as evidence." (*Cooley,* s*upra,* 29 Cal.4th at p. 245, fn. 8, citing *Parker, supra,* 60 Cal.App.4th at pp. 1469–1470.)

The key to reconciling these two legal principles lies in a careful examination of the SVP Act's provision for probable cause hearings. As has long been understood, exceptions to the Evidence Code's rule against hearsay (Evid. Code, § 1200) may be found in statutes outside the Evidence Code, and in judicial decisions. (*In re Malinda S.* (1990) 51 Cal.3d 368 (*Malinda S.*), partially superseded by statute as explained in *In re I.C.* (2018) 4 Cal.5th 869, 884–885.) We conclude that when the SVP Act directs the superior court to "review the petition" in determining probable cause (§ 6602(a)), the act establishes just such an exception to the hearsay rule. This exception allows—indeed requires—the trial court to consider the expert evaluations on which the petition necessarily depends, including case-specific facts obtained from hearsay sources described within the evaluations. Because these evaluations and their contents are "covered by a hearsay exception" specific to SVP probable cause hearings, they are not subject to exclusion under *Sanchez.* (*Sanchez, supra,* 63 Cal.4th at p. 686.)

The starting point for our analysis is the language of section 6602(a) governing SVP probable cause hearings. Section 6602(a) states that a

superior court judge "shall review the petition" to determine whether there is probable cause to believe the defendant "is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602(a).) The first question we must answer is, what does "the petition" include? In some cases, the statutorily required evaluation reports are attached to the petition (see *Couthren*, *supra*, 41 Cal.App.5th at p. 1006); in some they are not. Does the happenstance of a prosecutor's choice in preparing papers for filing determine whether the trial judge should review the expert evaluations? Or must a trial judge review the evaluations at a probable cause hearing regardless of whether they were attached to the petition or separately submitted? To answer these questions, we interpret section 6602(a) "in light of the language used and the purpose of the probable cause hearing within the structure of the [SVP Act]." (*Cooley*, *supra*, 29 Cal.4th at p. 247.) But we need not belabor the point, as even Walker agrees the reports may be introduced at a probable cause hearing, except to the extent they contain case-specific double hearsay.

The SVP Act does not expressly address what a petition must include, but it does elaborately describe the necessary role of the psychological evaluations in initiating an SVP proceeding. No petition may be filed unless a potential SVP has been evaluated by two professionals who agree the person meets the statutory definition of an SVP. (§ 6601, subds. (d), (e).) Only once this pair of evaluators has agreed may the Department of State Hospitals forward a request for a petition to be filed (§ 6601, subds. (f), (h)(1), (i)), and "[c]opies of the evaluation reports" must accompany the request. (§ 6601, subd. (h)(1).) As the Supreme Court in *Cooley* observed, "the determination at the probable cause hearing is based on the petition . . ., which is, in turn, *necessarily based on the two concurring psychological*

14

*evaluations required by section 6601.*" (*Cooley, supra,* 29 Cal.4th at p. 255, italics added.) Because of this necessary connection between the evaluations and the petition, one can "infer[] the report's facts were impliedly intended to be pleaded by averments or proper attachment to the petition." (*Parker, supra,* 60 Cal.App.4th at p. 1468, fn. 15.)

In light of the integral role the evaluations play in initiating an SVP petition, we conclude the evaluations must be deemed incorporated into the petition, regardless of whether the People physically attach them to the petition at the time of filing or provide them to the court under separate cover. It follows that because the evaluations are properly incorporated into a petition, section 6602's directive for a trial court to "review the petition" at a probable cause hearing necessarily requires the court to review the evaluations, as well. This is not an open-ended invitation for prosecutors to attach just any document to the petition so that the trial court will consider it in determining probable cause, but rather a rule that recognizes the unique role of the statutorily mandated psychological evaluations in initiating an SVP action.

Having concluded a trial judge must, in reviewing an SVP petition, review the expert evaluations on which it depends, we turn to the issue Walker presses—whether the judge may review and consider the entirety of an evaluation or only such portions as do not contain otherwise inadmissible double hearsay. Walker concedes the admissibility of certain portions of the evaluations as a substitute for the direct testimony of their authors, but contends that *Sanchez* precludes admission of case-specific hearsay contained within the evaluations unless the hearsay statements are independently proven or covered by a hearsay exception. We note that the language of section 6602(a) contains no such carve out. It requires the trial judge to

15

determine probable cause based on a review of "the petition," which we understand to include the evaluations, not just some portion of the petition and evaluations whose admissibility is independently established. But even if we conclude the language of section 6602(a) is ambiguous on this point, our analysis of the SVP Act's structure and purpose (*Cooley*, *supra*, 29 Cal.4th at p. 247) confirms that section 6602(a) excepts the evaluations and any information contained within them from the hearsay rule, allowing the trial judge to consider the reports in their entirety.

We begin, once again, with section 6601, the provision requiring two concurring psychological evaluations prior to the filing of an SVP petition. In section 6601, the Legislature prescribes a "standardized assessment protocol" for evaluators, spelling out a number of requirements: "The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders. Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder." (§ 6601, subd. (c).) Much of this broad array of historical information will be found in hearsay sources. Indeed, the evaluations in this case reveal that both evaluators relied on a variety of hearsay sources, including court records, probation reports, Walker's record of arrest and prosecutions, and Walker's prison central file recounting incidents during his incarceration. The Legislature clearly intended for evaluators to rely on hearsay sources in their evaluations, as the alternative would be to require that evaluators reinvestigate a lifetime worth of historical information comprising the person's "criminal and psychosexual history," a near-impossible task for which a psychologist is ill-suited. And given that the evaluations necessarily contain considerable amounts of case-

16

specific hearsay, the Legislature must have intended the trial judge to review this hearsay in reviewing the reports.  Were this not the case, most of the historical information included in the evaluations at the Legislature's behest would be subject to exclusion.

The fact that the evaluations are prepared by neutral evaluators applying a standardized assessment protocol supports their full admissibility at a probable cause hearing.  The evaluations are similar in this regard to the social studies the Supreme Court deemed admissible in juvenile dependency proceedings in *Malinda S., supra,* 4 Cal.5th 368.  There, the Supreme Court construed a statute directing juvenile courts to " 'receive and consider' " social studies prepared by probation officers or social workers as creating a hearsay exception reaching multiple-level hearsay contained in these reports. (*Malinda S.*, at pp. 375–376, 385.)  The court explained that the social studies are "prepared by disinterested parties in the regular course of their professional duties," and that "[t]hese elements of objectivity and expertise lend them a degree of reliability and trustworthiness."  (*Id.* at p. 377.)  The Court distinguished *Daniels v. Department of Motor Vehicles* (1983) 33 Cal.3d 532 (*Daniels*), where an accident report filed by a private individual was not admissible, although the Vehicle Code allowed the Department of Motor Vehicles to consider " 'its official records' " at a hearing to suspend a person's driver's license.  (*Malinda S.*, at pp. 377–378.)  Unlike a social study in a dependency proceeding, a private accident report "did not reflect the competency, reliability and trustworthiness necessary to exempt it from the hearsay rule."  (*Id.* at p. 377.)  The Court also emphasized that hearsay in "a social study is admissible only if, on request of the parent or guardian, the social worker is made available for cross-examination."  (*Id.* at p. 378.)

17

Like the social studies in *Malinda S.* and unlike the accident reports in *Daniels*, the SVP Act evaluations are prepared by disinterested professionals who must follow a standardized assessment protocol, and who may be cross-examined at the probable cause hearings on the accuracy of their reports. These hallmarks of reliability support the admissibility at a probable cause hearing of the evaluations, including any hearsay within them.

We are also guided by a commonsense consideration that influenced our Supreme Court in *Conservatorship of Manton* (1985) 39 Cal.3d 645 (*Manton*), namely the wisdom of avoiding duplication in the evidence at an initial hearing and a subsequent trial. *Manton* addressed the statutory scheme for conservatorship proceedings for gravely disabled persons. Applicable statutes direct a county officer to investigate alternatives to conservatorship and "render to the court a written report of investigation prior to" the initial conservatorship hearing. (§ 5354, subd. (a).) At the initial hearing, the court "may receive the report in evidence and may read and consider the contents thereof in rendering its judgment." (*Ibid.*) But if the proposed conservatee demands a subsequent jury trial, *Manton* held that the investigator's report is not admissible at trial. (*Manton*, at p. 652.) The court explained: "If the report were admissible at both the initial hearing and a subsequent court trial, the two proceedings would be essentially identical in terms of the acceptable range of evidence to be considered. We believe that the better interpretation is one avoiding such redundancy in the absence of clear legislative intent to the contrary." (*Id.* at p. 651.)

*Manton*'s preference for avoiding redundancy applies with the same force here, where all agree the psychologists' evaluations and multiple-level hearsay in them are inadmissible at an SVP trial. (See *People v. Yates* (2018) 25 Cal.App.5th 474, 476; *People v. Roa* (2017) 11 Cal.App.5th 428, 452–453.)

18

Similar to the directive in the conservatorship statutes, the SVP Act directs courts to "review the petition" at a probable cause hearing, but does not repeat this directive for the subsequent trial. (§ 6602(a).) The conservatorship and SVP statutes thus similarly differentiate the evidence appropriate to a probable cause or initial hearing from the evidence admissible in the subsequent trial. As in *Manton*, our construction of the SVP Act recognizes a hearsay exception that applies at the initial probable cause hearing but not at trial, while Walker's reading of the SVP Act contemplates two proceedings that "would be essentially identical in terms of the acceptable range of evidence to be considered." (*Manton*, *supra*, 39 Cal.3d at p. 651.) Like the *Manton* court, we believe the "better interpretation is one avoiding such redundancy in the absence of clear legislative intent to the contrary," which we have not found. (*Ibid.*) We find it highly unlikely the Legislature intended for a prosecutor to procure independent evidence for the vast amount of case-specific hearsay information contained in a psychological evaluation—including criminal history, familial and relationship history, medical information, and a defendant's prison disciplinary record—at a probable cause hearing, and then again at a subsequent trial.

*Malinda S.* and *Manton* are far from the only examples where courts may consider certain hearsay evidence at a specialized proceeding. It is well-settled that certain types of hearsay may be considered at criminal sentencing hearings (Pen. Code, § 1170, subd. (b); *People v. Arbuckle* (1978) 22 Cal.3d 749, 754), parole and probation revocation proceedings (*People v. Maki* (1985) 39 Cal.3d 707, 709; *People v. O'Connell* (2003) 107 Cal.App.4th 1062, 1066–1067); restitution hearings (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543); and disposition hearings in juvenile delinquency cases (*In re Vincent G.* (2008) 162 Cal.App.4th 238, 244). While these

19

proceedings differ from SVP probable cause hearings in several respects, they share the common theme that hearsay evidence may be presented in a variety of circumstances consistent with legislative mandates and a party's due process rights.

In reaching a result contrary to the one we reach, the courts in *Bennett* and *Couthren* acknowledge many of the authorities we have cited, but attempt—unpersuasively in our view—to harmonize their holdings with those authorities. For example, the court in *Bennett* believes that excluding on hearsay grounds "a key piece of evidence upon which the experts relied . . . is consistent with *Parker* and *Cooley*'s findings that a defendant may challenge the accuracy of the expert reports at the probable cause hearing." (*Bennett*, *supra*, 39 Cal.App.5th at p. 883.) We believe this is a misreading of *Parker* and *Cooley*. When those cases discuss a defendant's ability to challenge the accuracy of the evaluations, they refer specifically to the defendant's right to cross-examine the experts on their findings, and follow up by noting the defendant's right to present conflicting evidence. (See *Parker*, *supra*, 60 Cal.App.4th at p. 1470 ["the prospective SVP should have the ability to challenge the accuracy of such reports by calling such experts for cross-examination"]; *Cooley*, *supra*, 29 Cal.4th at p. 245, fn. 8 [same].) The courts never equate questioning experts about the accuracy of their evaluations with an objection to the *admissibility* of the evaluations on hearsay grounds. Rather, both courts conclude that evaluations are admissible despite containing hearsay.

We likewise disagree with the suggestion that the rule of *Parker* and *Cooley* is no longer good law in light of *Sanchez*. (See *Bennett*, *supra*, 39 Cal.App.5th at p. 883.) *Sanchez* abolished a practice whereby courts would admit hearsay facts into evidence through expert testimony under the guise

20

that such facts were not being admitted for their truth, but rather to show the basis of an expert's opinion. (*Sanchez, supra*, 63 Cal.4th at pp. 680–681.) But *Sanchez* affirmed the well-settled rule that hearsay, including case-specific facts related by experts, is admissible if it is covered by an exception to the hearsay rule. (*Id.* at p. 686 ["What an expert *cannot* do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception"].) We read *Parker* and *Cooley* as recognizing such an exception to the hearsay rule for psychological evaluations at an SVP probable cause hearing. *Parker* and *Cooley* thus remain entirely consistent with *Sanchez*.

*Couthren* observes, with some justification, that *Parker* and *Cooley* did not squarely confront the issue we decide today. *Couthren* notes that *Parker* "provides no analysis supporting the free admission of the evaluators' reports as competent evidence to support a finding of probable cause and contains no discussion regarding the competency of the multiple hearsay necessarily contained within such expert evaluations." (*Couthren, supra*, 41 Cal.App.5th at p. 1017). *Couthren* also downplays *Cooley*'s citation to *Parker*, as "describing matters which were not disputed by the parties and therefore not analyzed by the court." (*Couthren*, at p. 1017.) We do not believe that *Parker* and *Cooley* are so easily dismissed. The court in *Parker* was squarely confronted with a hearsay challenge to the evaluations, as the defendant's primary contention was that the trial court's " 'paper review' " procedure—where it considered only the evaluations at the probable cause hearing—impermissibly "relied upon inadmissible hearsay." (*Parker, supra*, 60 Cal.App.4th at p. 1460.) And *Cooley*, although its citation to *Parker* is dicta, is a case devoted to "the scope and substance of the probable cause determination required by section 6602, subdivision (a)." (*Cooley, supra*, 29

21

Cal.4th at p. 235.)  We do not believe the Supreme Court would have made such germane pronouncements if it did not mean what it said.

*Bennett* and *Couthren* also analogize an SVP probable cause hearing to a criminal preliminary hearing, and note that the hearsay exception which allows qualified peace officers to relate out-of-court statements at a preliminary hearing (see Pen. Code, § 872, subd. (b)) does not support the admission of hearsay in evaluators' reports at an SVP probable cause hearing.  (*Bennett*, *supra*, 39 Cal.App.5th at p. 884, fn. 6.; *Couthren*, *supra*, 41 Cal.App.5th at pp. 1017–1018.)  This is true but, we think, beside the point.  We agree that the two hearings share a similar purpose—to " ' " 'weed out groundless or unsupported charges . . . and to relieve the accused of the degradation and expense of a . . . trial.' " ' " (*Cooley*, *supra*, 29 Cal.4th at p. 247.)  But it is apparent from the statutes governing the two hearings that they fulfill this purpose in different ways.  For SVP probable cause hearings, section 6602 directs a trial court to "review the petition," but makes no mention of the prosecution's obligation to examine witnesses or present other types of evidence.  (See § 6602(a).)  The statues governing criminal preliminary hearings, by contrast, contemplate that the prosecution will present its case by examining witnesses in the presence of the defendant.  (See Pen. Code, § 865.)  The hearsay exception added to the Penal Code by Proposition 115 (see Pen. Code, § 872, subd. (b)) allows prosecutors to spare crime victims and witnesses from testifying at a preliminary hearing and serves as a powerful exception to the hearsay rule in the context of a criminal prosecution.  The *Parker/Cooley* rule has an analogous, but not identical, effect in the context of an SVP probable cause hearing.[3]

---

[3]  Accepting that Proposition 115 does not apply at an SVP probable cause hearing, we note that the rule of *Bennett* and *Couthren* results in an

Finally, we are not persuaded by Walker's argument that it would be inappropriate to construe section 6602(a) as excepting expert evaluations from the hearsay rule at a probable cause hearing in light of a separate, more explicit hearsay exception in section 6600, subdivision (a)(3) (§ 6600(a)(3)). This provision of the SVP Act allows the prosecution to rely on documentary evidence to prove the existence of, and specific facts underlying, any convictions for a sexually violent offense that form the predicate for the SVP petition. (See § 6600(a)(3) [existence and details of predicate offenses may be shown with, inter alia, "preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of State Hospitals"]; accord *Bennett*, *supra*, 39 Cal.App.5th at p. 880; *Couthren*, *supra*, 41 Cal.App.5th at p. 1016.) Section 6600(a)(3) functions as a hearsay exception that not only applies at SVP probable cause hearings, but also extends to SVP trials. It is "intended to relieve victims of the burden and trauma of testifying about the details of the crimes underlying the prior convictions," as well as to address the concern "that victims and other percipient witnesses would no longer be available." (*People v. Otto* (2001) 26 Cal.4th 200, 208 (*Otto*).)

---

SVP probable cause hearing that is more cumbersome for the court and disruptive for victims and witnesses than is a Proposition 115 preliminary hearing in a felony prosecution. The *Bennett* and *Couthren* rule requires victims and witnesses (except certain crime victims excepted under § 6600(a)(3), discussed *infra*) to testify at a probable cause hearing *and* at trial, perhaps several times over if an SVP later contests his or her right to unconditional release. (See *Cheek*, *supra*, 25 Cal.4th at p. 900.) If, to proceed more efficiently and spare victims and witnesses from testifying repeatedly, the prosecutor elicits from the expert at the probable cause hearing his or her opinion but not the case-specific hearsay on which it is based (see *Sanchez*, *supra*, 63 Cal.4th 665 at p. 685), the trial court will have less information at its disposal than the Legislature intended in directing the trial court to "review the petition" to determine probable cause. (§ 6602(a).)

23

The hearsay exception for expert evaluations that we are concerned with in this case is different in both function and purpose. The exception here is limited to probable cause hearings and allows the People to make an initial showing, through the evaluations of experts, that an SVP defendant has a diagnosed mental disorder and is likely to engage in sexually violent criminal behavior that is predatory in nature. The exception is designed to streamline the People's ability to make this initial showing without having to duplicate the evidence they will need to put forth at trial, while preserving the SVP defendant's ability to challenge the soundness of the evaluators' opinions. The exception here may also "relieve victims of the burden and trauma of testifying about the details" of certain crimes (*Otto*, *supra*, 26 Cal.4th at p. 208.), but *only* at the probable cause hearing. An alleged victim of crimes other than the predicate crimes of conviction must testify at an SVP trial, unless other admissible evidence establishes the facts on which the evaluators rely.

In summary, we conclude that section 6602(a) creates an exception to the hearsay rule that permits a trial court at an SVP probable cause hearing to accept and consider the statutorily required expert evaluations, including case-specific facts obtained from hearsay sources contained within the evaluations. We respectfully disagree with *Bennett*'s and *Couthren's* holdings to the contrary.[4] Because the evaluations are covered by a hearsay exception,

---

[4] Walker suggests that since the Supreme Court denied review in *Bennett*, the court concluded that *Bennett* was correctly decided. He also asks that we take judicial notice of the petition for review filed with the Supreme Court in *Bennett* and the Court's order denying review. We grant Walker's request for judicial notice, but reject his argument. "[A] denial of a petition for review is not an expression of opinion of the Supreme Court on the merits of the case." (*Camper v. Workers' Comp. Appeals Bd.* (1992) 3 Cal.4th 679, 689, fn. 8.)

the trial court did not err in overruling Walker's objection to the evaluations and relying on them in assessing probable cause.

We conclude by noting that an SVP defendant is not at the mercy of a psychologist's evaluation at a probable cause hearing. A defendant may assure himself that an evaluator is qualified to provide a medical opinion (Evid. Code, § 720) and that the evaluations satisfy other admissibility requirements. (See *In re Kirk, supra*, 74 Cal.App.4th at pp. 1076–1077.) As *Cooley* and *Parker* teach, an SVP defendant at a probable cause hearing may both cross-examine the professionals who prepared the evaluations and call witnesses to provide relevant testimony. Where an evaluation relies on hearsay evidence that is unreliable, the SVP defendant can expose that vulnerability at the probable cause hearing. And where the prosecution is unable to produce at trial necessary witnesses on whose hearsay statements the evaluators rely, that problem, too, will be fully exposed at the appropriate time. The hearsay exception contained in section 6602(a) is limited to probable cause hearings, and will not relieve the People of their obligation to call witnesses at an SVP trial. (See *People v. Yates, supra*, 25 Cal.App.5th at p. 476; *People v. Roa, supra*, 11 Cal.App.5th at pp. 452–453.)

## DISPOSITION

The petition for writ of mandate is denied.

---

Walker separately requests judicial notice of the written objections he filed in this case to the admissibility of the Karlsson and MacSpeiden evaluations. We deem the objections a part of the trial court record, and therefore need not separately take judicial notice of them.

25

_____
TUCHER, J.


WE CONCUR:


_____
STREETER, Acting P. J.


_____
BROWN, J.


*Walker v. Superior Court* (A159563)

26

Trial Court:                     City & County of San Francisco Superior Court

Trial Judge:                     Hon. Charles Crompton

Counsel for Petitioner:          Erwin F. Fredrich

Counsel for Respondents:         Xavier Becerra, Attorney General; Lance E Winters, Chief Assistant Attorney General; Jeffrey M. Laurence, Senior Assistant Attorney General; Rene A. Chacon, Supervising Deputy Attorney General; Moona Nandi, Deputy Attorney General